IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cleopheus Davis,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 11-0715-PHX-FJM (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE FREDERICK J. MARTONE, UNITED STATES DISTRICT JUDGE:

    Petitioner, confined in the Arizona State Prison Complex, Kingman, and proceeding pro se, has filed a Petition Under 28 U.S.C. § 2254 For A Writ of Habeas Corpus By A Person In State Custody (Non-Death Penalty) (Doc. 1). Respondents have filed an Answer (Doc. 13) and Petitioner has filed a Reply (Doc. 15).

**I.    Background**

    On April 16, 2007, Petitioner was charged by information in Maricopa County Superior Court with possession of narcotic drugs and possession of drug paraphernalia (Doc. 13, Ex. A). The State alleged Petitioner had multiple prior felony convictions, including convictions for marijuana possession, possession of drug paraphernalia and resisting arrest (*Id.*, Ex. B, C & D). The charges against Petitioner were tried to a jury who returned a verdict of guilty on all charges on May 1, 2008 (*Id.*, Ex. I & Ex. H at 92-94).

On June 2, 2008, following an evidentiary hearing, the trial court found Petitioner had five prior felony convictions (*Id.*, Ex. K). On June 27, 2008, the trial court sentenced Petitioner to a mitigated sentence of eight years for possession of narcotic drugs and a concurrent mitigated sentence of three years for possession of drug paraphernalia (*Id.*, Ex. L & Ex. M at 10-14).

On July 16, 2008, Petitioner filed a notice of appeal (Doc. 13, Ex. FF #88). Petitioner argued on appeal that the trial court violated his state and federal constitutional rights by allowing the prosecutor to strike two African-American jurors from the panel (*Id.*, Ex. N, O & P). On January 21, 2010, the Arizona Court of Appeals affirmed Petitioner's conviction (*Id.*, Ex. Q, *State v. Cleopheus Davis*, No. CA-CR 08-0608, Memorandum Decision (Jan. 21, 2010)).

While Petitioner's direct appeal was pending, Petitioner pro se filed a notice of post-conviction relief in the trial court on July 21, 2008 (Doc. 13, Ex. R).[1] Petitioner's appointed counsel moved to dismiss the notice without prejudice because of the pending appeal (*Id.*, Ex. S). On October 22, 2008, the trial court dismissed Petitioner's notice of post-conviction relief (*Id.*, Ex. T).

On March 9, 2010, Petitioner pro se filed a second notice of post-conviction relief (*Id.*, Ex. U). On March 16, 2010, the trial court appointed counsel to represent Petitioner (*Id.*, Ex. V). On July 16, 2010, counsel notified the court he found no meritorious issue, including an ineffective assistance of counsel claim, to justify the filing of a petition for post-conviction relief (*Id.*, Ex. W).

On August 16, 2010, Petitioner, proceeding pro se, filed a petition for post-conviction relief in which he contended newly-discovered material required his conviction to be vacated,

---

[1] *See Hemmerle v. Schriro*, 495 F.3d 1069, 1071 & n.1 (9th Cir. 2007) (Arizona prisoner filed state post-conviction relief notice one day after filing direct appeal in state court; overlapping direct and collateral appeals are allowed under Arizona rules, citing Ariz.R.Crim.P. 32.4 ("[i]n a noncapital case, the notice must be filed within ninety days of the entry of judgment and sentence or within thirty days of the order and mandate affirming the judgment and sentence on direct appeal, whichever is the later.")).

- 2 -

1 that is, the jury would not have convicted had they known the 12 milligrams were not crack
2 cocaine (Doc. 13, Ex. X). Petitioner cited the denial of his motion for directed verdict and
3 argued that Kyle Mueller, the forensic scientist, testified he did not perform a quantitative
4 analysis of the 12 milligrams of crack cocaine (*Id.*).[2] The State responded that the petition
5 should be dismissed for failure to state a cognizable claim for relief (*Id.*, Ex. Y). Petitioner
6 filed a Reply in which he argued that the trial evidence was not sufficient to support his
7 conviction (*Id.*, Ex. Z). On November 11, 2010, the trial court summarily dismissed the
8 petition (*Id.*, Ex. AA).

9 On February 10, 2011, Petitioner filed a petition for review in the Arizona Court of
10 Appeals, contending the evidence at trial was insufficient to support his conviction (Doc. 13,
11 Ex. BB). On February 17, 2011, the court of appeals dismissed the petition for review on the
12 ground it was not filed within 30 days of the trial court's disposition of Petitioner's post-
13 conviction petition as required by Ariz.R.Crim.P. 32.9(c) (*Id.*, Ex. CC). Petitioner's motion
14 for reconsideration was denied on March 11, 2011 (*Id.*, Ex. DD & EE).

15 On April 11, 2011, Petitioner filed the Petition for Writ of Habeas Corpus in the
16 federal district court asserting two grounds for relief (Doc. 1).

17 In Ground One, Petitioner raises as an issue whether the trial court clearly erred "in
18 determining that the Prosecutor did not engage in purposeful discrimination in exercising two
19 of her peremptory strikes" (Doc. 1 at 6). In support of Ground One, Petitioner alleges that
20 he has a right to a trial by a jury free of ethnic and racial prejudice and when a juror is
21 eliminated based on ethnicity, the defendant and the juror are denied constitutional rights.
22 Petitioner further alleges that two African-American venire persons, Jurors 33 and 40, were
23 eliminated for improper reasons. Petitioner contends Juror 33 was eliminated for answering
24 he could be fair to both the State and defendant when questioned by the court and, regarding
25 Juror 40, the prosecutor claimed to see this juror "smirk" when answering she could be fair.

---

[2] Kyle Mueller testified at Petitioner's state court criminal trial (Doc. 13, Ex. H at 7-41). The trial court denied Petitioner's motion for directed verdict (*Id.*, at 5-6, 16-17, 42).

- 3 -

1    In Ground Two, Petitioner contends the existence of "newly-discovered material" requires the court to vacate the conviction or sentence (Doc. 1 at 7). In support of Ground Two, Petitioner contends the jury would not have convicted had they known the 12 milligrams were not crack cocaine. Petitioner alleges as follows:

> Defense moved for a directed verdict motion was denied, during testimony by the forensic scientist, Kyle Muller, of the Phoenix crime lab, focusing on the 12 milligrams of crack cocaine, Kyle Muller, testified that he did not know with 100% certainty what actually the componets [sic] that are in the particular 12 milligrams. A quantitative analysis which determines the purity of a substance to tell just how much crack cocaine is actually in the 12 milligrams was not done. Kyle Mueller, the forensic scientist for the State, testified that he only did a qualitative analysis on a 3 milligram portion of the 12 milligrams of crack cocaine.

(*Id.*).

## II.   Discussion

Respondents contend Petitioner's claim in Ground Two is procedurally barred because he failed to fairly present the claim to the trial court as a federal constitutional claim and failed to present any claim to the Arizona Court of Appeals (Doc. 13 at 7). Respondents have addressed the merits of Ground One and contend that Petitioner's federal petition does not support the conclusion that the Arizona Court of Appeals' rejection of his claim regarding the striking of two jurors was "contrary to" or an "unreasonable application" of Supreme Court precedent (Doc. 13 at 12-21).

### A.   Timeliness of the Petition

Respondents concede the timeliness of Petitioner's habeas petition filed on April 11, 2011 (Doc. 13 at 6).

### B.   Procedural Default of Ground Two

#### 1.   Legal Standards

To be eligible for federal habeas corpus relief, a state prisoner must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*,

1 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To
2 properly exhaust state remedies, a petitioner must fairly present his claims to the state's
3 highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838,
4 848 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of
5 Appeals by properly pursuing them through the state's direct appeal process or through
6 appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999);
7 *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

8       A claim has been fairly presented if the petitioner has described both the operative
9 facts and the federal legal theory on which the claim is based. *Baldwin v. Reese*, 541 U.S.
10 27, 29, 33 (2004); *Sivak v. Hardison*, 658 F.3d 898, 908 (9th Cir. 2011). "[A] state prisoner
11 has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he
12 specifically indicated to that court that those claims were based on federal law." *Lyons v.
13 Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th
14 Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal
15 constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues
16 raised in state court." *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996). "[G]eneral appeals
17 to broad constitutional principles, such as due process, equal protection, and the right to a fair
18 trial, are insufficient to establish exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th
19 Cir. 1999) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

20       If a petition contains claims that were never fairly presented in state court, the federal
21 court must determine whether state remedies remain available to the petitioner. *See Coleman
22 v. Thompson,* 501 U.S. 722, 735 n.1 (1991); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982);
23 *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998). If remedies are still available in state
24 court, the petition may be dismissed without prejudice pending the exhaustion of state
25 remedies. *Rose v. Lundy,* 455 U.S. at 510. If the court finds the petitioner would have no
26 state remedy were he to return to the state court, his claims are considered procedurally
27 defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *see also Sandgathe v. Maass*, 314
28

1  F.3d 371, 376 (9th Cir. 2002) (a defendant's claim is procedurally defaulted when it is clear
2  the state court would hold the claim procedurally barred).

3        The federal court will not consider these claims unless the petitioner can demonstrate
4  that a miscarriage of justice would result, or establish cause for his noncompliance and actual
5  prejudice. *See Dretke v. Haley*, 541 U.S. 386, 392-93 (2004); *Schlup v. Delo*, 513 U.S. 298,
6  321 (1995); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). To establish a "fundamental
7  miscarriage of justice," a state prisoner must establish it is more likely than not that no
8  reasonable juror could find him guilty of the offense. *Schlup*, 513 U.S. at 327. A state
9  prisoner demonstrates "cause" by showing that some objective factor external to the prisoner
10 or his counsel impeded efforts to comply with the state's procedural rules. *See Murray v.*
11 *Carrier*, 477 U.S. at 488. To establish prejudice, the prisoner must show that the alleged
12 constitutional violation "worked to his actual and substantial disadvantage, infecting his
13 entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152,
14 170 (1982).

15     **2.**    **Application**

16       Petitioner alleged in the petition for post-conviction relief he filed in the state trial
17 court that the trial court erred in denying his motion for a directed verdict and/or that the
18 verdict was based on "insubstantial evidence" (Doc. 13, Ex. X). He made a similar allegation
19 in the Arizona Court of Appeals when he submitted a petition for review arguing that the trial
20 evidence "was insufficient to support [his] conviction" (Doc. 13, Ex. BB). In raising the
21 claim in each court Petitioner did not mention the U.S. Constitution or federal laws, and did
22 not alert the state court he was raising a constitutional violation. Petitioner therefore did not
23 "fairly present" a federal constitutional claim to the state trial or appellate court.

24       Any return to state court by Petitioner would be "futile." Petitioner would no longer
25 have a remedy if he returned to the state court. The time has passed to seek post-conviction
26 relief in state court under Ariz.R.Crim.P. 32.4(a) and Petitioner has not shown any of the
27 exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him. Petitioner's
28

1 citation to the trial testimony of State's witness Kyle Mueller is not "newly-discovered
2 material." Petitioner's Ground Two has been procedurally defaulted.

3 Where issues are procedurally defaulted, federal review of the claim is not barred if
4 the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice."
5 In his reply Petitioner alleges as "cause" that "State appointed counsel failed to fairly present
6 his claim to the superior court as a federal constitutional claim. Appointed counsel failed to
7 present any claim, and left it up to Petitioner Davis, who has no legal experience to do
8 himself" (Doc. 15, Mem. at 7). The court construes Petitioner's contention as referring to
9 appointed state post-conviction counsel who notified the court he found no meritorious issue,
10 including an ineffective assistance of counsel claim, to justify the filing of a post-conviction
11 petition (Doc. 13, Ex. W).

12 In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court held that, in certain
13 circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings
14 may establish cause for a prisoner's procedural default of a claim of ineffective assistance
15 at trial." *Id.* at 1315. In this case, however, procedurally defaulted Ground Two is not a
16 claim of ineffective assistance of trial or appellate counsel but an independent substantive
17 claim. *Id.* at 1319 ("an attorney's negligence in a postconviction proceeding does not
18 establish cause, and this remains true except as to initial-review collateral proceedings for
19 claims of ineffective assistance of counsel at trial") (citing *Coleman v. Thompson*, 501 U.S.
20 722 (1991)). Petitioner has not shown "cause" based on a claim that he was abandoned by
21 post-conviction counsel. *See Maples v. Thomas*, 132 S.Ct. 912, 922 (2012) (finding cause
22 for procedural default when an attorney "abandons his client without notice, and thereby
23 occasions the default," but "[n]egligence on the part of a prisoner's postconviction attorney
24 does not qualify as 'cause'"). The record shows that state post-conviction counsel in reaching
25 his decision reviewed the trial file and appellate record, discussed the case and any possible
26 Rule 32 issues with trial and appellate counsel, and considered Petitioner's input (Doc. 13,
27 Ex. W).

28

Petitioner has not established "cause" for the procedural default or resulting prejudice. He does not contend he is actually innocent and has not shown a miscarriage of justice. It is recommended that Ground Two be denied and dismissed.

## C.     Merits Analysis of Ground One

### 1.     Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Harrington v. Richter*, 131 S.Ct. 770, 785-86 (2011). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. A state court's decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The "unreasonable application" clause requires the state court's application of Supreme Court law to be more than incorrect or erroneous; it must be objectively unreasonable. *Id.*

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. at 786-87.

- 8 -

"Clearly established Federal law" in § 2254(d)(1) refers to the Supreme Court's precedents in effect at the time the state court renders its decision. *Lockyer*, 538 U.S. at 71-72; *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court." *Thaler v. Haynes*, 130 S.Ct. 1171, 1173 (2010). In applying these standards, the federal habeas court reviews the last reasoned decision by the state court. *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

### 2. Application

Petitioner's Ground One based on the State prosecutor's strike of two African-American jurors from the panel is essentially the same argument Petitioner raised on direct appeal to the Arizona Court of Appeals. During trial, Juror 33, who had no previous jury service, answered that his younger brother had been in prison three times, most recently for drug possession with intent to sell (Doc. 13, Ex. E at 63, 68). When first asked by the trial court if he could set aside what happened to his brother, Juror 33 answered he did not know (*Id.* at 68). He answered he thought he would be "okay" if he were sitting in the defendant's position and he did not "think it would be a problem" if he were sitting with the prosecution (*Id.* at 68-69). When questioned further by the trial court regarding his impartiality, Juror 33 answered "it's a tough one to call, really, whether I could be able to stand in judgment or not" (*Id.* at 69). He then answered "yes" to whether he would want someone like himself sitting in judgment on either the defendant's or prosecution's side (*Id.* at 69-70). In striking Juror 33, the prosecutor mentioned the juror's seemingly inconsistent statements and cited his "reluctance to be more sympathetic for the prosecution" (*Id.* at 85-86).

Juror 40 answered that she had been arrested for domestic violence in 2006 but "everything was dropped" (*Id.* at 70). Juror 40 answered "yes" when asked if she could set aside that circumstance and be fair and impartial (*Id.* at 71). When asked to explain her strike of Juror 40, the prosecutor cited the domestic violence arrest and that she had seen a smirk by Juror 40 which had been personally observed not only by the prosecutor but also by other

1  persons in the courtroom (*Id.* at 86-87).  Defense counsel had not seen the smirk but stated
2  it "could be for other reasons if she had a smirk on her face" (*Id.* at 87).

3         Petitioner challenged the State's rejection of these two jurors in the state trial court
4  proceedings and raised the issue on direct appeal (Doc. 13, Ex. E at 84-87).  The Arizona
5  Court of Appeals rejected Petitioner's argument, making its memorandum decision (Doc. 13,
6  Ex. Q) the last reasoned state court decision on the issue. *Ylst v. Nunnemaker*, 501 U.S. 797,
7  802-03 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).

8         *Batson v. Kentucky*, 476 U.S. 79 (1986), established a three-step process for
9  evaluating a defendant's objection to a peremptory challenge.  A defendant must make a
10 prima facie showing that a challenge was based on race. If a defendant makes this showing,
11 the prosecution must then offer a race-neutral basis for the challenge. The prosecutor's
12 explanation need not be persuasive or even plausible. Finally, the court must determine
13 whether the defendant has shown "purposeful discrimination." *Batson*, 476 U.S. at 97-98;
14 *Rice v. Collins*, 546 U.S. 333, 338 (2006).  The ultimate burden of persuasion remains with
15 the opponent of the strike. *Rice*, 546 U.S. at 338.  "[A] federal habeas court can only grant
16 [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for
17 the *Batson* challenge." *Id.* at 338-39.  State-court factual findings are presumed correct. 28
18 U.S.C. § 2254(e)(1).  On federal review of a habeas petition, "AEDPA 'imposes a highly
19 deferential standard for evaluating state-court rulings' and 'demands that state-court
20 decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 131 S.Ct. 1305, 1307
21 (2011) (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).

22        The state appellate court began its analysis by citing the three-step *Batson* process
23 (Doc. 13, Ex. Q ¶ 6).  It first found that the trial court "implicitly" determined defense
24 counsel had made a prima facie showing because it asked the prosecutor to articulate race-
25 neutral reasons for striking Jurors 33 and 40 (*Id.* ¶ 7). The appellate court then discussed the
26 circumstances and questioning of each juror, quoting from the trial record and noting in a
27 footnote that the record did not identify the race of other persons on the panel (*Id.* ¶¶ 8-9 &
28 n.4; see Doc. 13, Ex. O at 5 n.3 & Ex. P at 12 for the parties' appellate briefing in which they

- 10 -

1 agreed the record did not show the race of other persons on the panel). The court of appeals
2 reasoned that, based on the State's concerns regarding Juror 33, that is, his inconsistent
3 statements and perceived reluctance to be more sympathetic to the prosecution, and as to
4 Juror 40, that is, her prior arrest and attitude (smirk), the prosecutor had offered race-neutral
5 reasons (Doc. 13, Ex. Q ¶¶ 8-17). *See Mitleider v. Hall*, 391 F.3d 1039, 1048 (9th Cir. 2004)
6 (previous negative experience with law enforcement constitutes acceptable race-neutral
7 explanation for striking a potential juror); *Williams v. Rhoades*, 354 F.3d 1101, 1109 (9th
8 Cir. 2004) (citing *Burks v. Borg*, 27 F.3d 1424, 1429 & n.3 (9th Cir. 1994) ("prosecutor's
9 evaluation of a juror's demeanor, tone, and facial expressions may lead to a 'hunch' or
10 'suspicion' that the juror might be biased, and that a peremptory challenge based on this
11 reason would be legitimate")); *United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir.
12 1987) (excluding a juror because of a poor attitude in answer to voir dire questions is within
13 prosecutor's prerogative). The state appellate court also considered Petitioner's argument that
14 the State had failed to strike non-African-American jurors with the same characteristics as
15 Jurors 33 and 40, noting that reference to Juror 43, who like Juror 40 was in the banking
16 industry, was not persuasive. The State's reason for striking Juror 40 had nothing to do with
17 her work in the banking industry and unlike Juror 40, Juror 43 had never been arrested (Doc.
18 13, Ex. Q ¶ 15 & Ex. E at 64, 65).

19 The Arizona Court of Appeals decision was not contrary to, or an unreasonable
20 application of, the holdings of then-existing Supreme Court precedent. It is recommended
21 that Ground One be denied and dismissed.

22 **III.    Conclusion**

23 Having determined that Petitioner's claim in Ground Two is procedurally defaulted
24 and that Petitioner has not satisfied the standard for habeas relief as to Ground One, the court
25 will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed.

26 **IT IS THEREFORE RECOMMENDED:**

27
28

1     That the Petition Under 28 U.S.C. § 2254 For A Writ of Habeas Corpus By A Person In State Custody (Non-Death Penalty) (Doc. 1) be **DENIED AND DISMISSED WITH PREJUDICE;**

**IT IS FURTHER RECOMMENDED:**

    That a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

    This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

    DATED this 4th day of May, 2012.

*/s/ Edward C. Voss*
Edward C. Voss
United States Magistrate Judge